UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                      Case No. 1:24-cv-00049

AMY L. POSTMA, D.O.,            Hon.

    Defendant.
_____/

## COMPLAINT

The United States of America states the following as its Complaint against the Defendant:

### I.  INTRODUCTION

1.    This is an action to recover civil penalties and obtain injunctive relief against Amy L. Postma, D.O. ("Dr. Postma") for issuing illegitimate prescriptions in violation of the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801-971, and its implementing regulations.

### II.  JURISDICTION AND VENUE

2.    The Court has jurisdiction pursuant to 21 U.S.C. §§ 842(c)(1), 843(f)(2), and 882(a), and 28 U.S.C. §§ 1331, 1345, and 1355(a).

3.    Venue is appropriate in this District pursuant to 21 U.S.C. § 843(f)(2) and 28 U.S.C. §§ 1391(b)(1), 1391(b)(2), and 1395(a).

### III.  THE PARTIES

4.    Plaintiff is the United States of America.

5. Dr. Postma is a resident of Chippewa County in the State of Michigan. Dr. Postma maintained a Drug Enforcement Administration ("DEA") controlled substance registration, No. FP0859732, which authorized her to prescribe controlled substances. Dr. Postma also maintained separate licensure with the State of Michigan to practice as an osteopathic physician and prescribe controlled substances.

## IV. LEGAL BACKGROUND

6. The CSA creates a category of drugs, known as "controlled substances," that are subject to strict federal monitoring and regulation based on their potential for addiction and abuse. Controlled substances are categorized into five schedules based on several factors, including their abuse potential and the likelihood they will cause dependence if misused. A drug becomes a "controlled substance" when it is added to one of these schedules.

7. To prevent the diversion of controlled substances, the CSA regulates persons, companies, and other entities that manufacture, distribute, and dispense controlled substances.

8. The CSA and its implementing regulations require those who handle controlled substances, other than the ultimate user, to obtain a controlled substance registration from DEA. 21 U.S.C. §§ 822, 823; 21 C.F.R Part 1301. Persons maintaining a controlled substance registration from DEA are referred to as "registrants."

9. In order for a practitioner to prescribe or dispense a controlled substance, that practitioner must be registered with DEA for those activities.

10. The CSA prohibits a registered prescriber from issuing an invalid prescription for a controlled substance. 21 U.S.C. §§ 829, 842(a)(1). In order for a prescription for a controlled substance to be valid, it must be issued for a legitimate medical purpose by a registered practitioner acting in the usual course of professional practice. 21 C.F.R. § 1306.04(a).

## V.  FACTS

11. Dr. Postma was a physician at the Sault Tribal Health and Human Services Center, located in St. Ignace, Michigan.

12. Beginning in or around October 5, 2018, Dr. Postma began writing prescriptions for oxycodone-acetaminophen and hydrocodone-acetaminophen to four individuals whom she knew personally.

13. Both oxycodone-acetaminophen and hydrocodone-acetaminophen are opioid-based pain medications listed as Schedule II controlled substances.

14. As further described below, Dr. Postma issued each of these prescriptions without a legitimate medical purpose and outside of the usual course of professional practice.

15. Dr. Postma collected the controlled substances prescribed in the names of these four individuals for her own use. She did so by collecting the filled prescriptions herself, purportedly on behalf of those individuals, or directing the individuals to fill the prescriptions and supply her with the controlled substances.

**Individual A**[1]

16. From October 5, 2018 through September 30, 2022, Dr. Postma issued eighteen (18) prescriptions made out to the name of Individual A for oxycodone-acetaminophen, an opioid-based pain medication listed as a Schedule II controlled substance.

17. Individual A never requested or received these prescribed opioids.

18. Instead, Dr. Postma, without Individual A's knowledge and without a legitimate medical purpose, used Individual A's name and identity and issued these opioid prescriptions for Dr. Postma's personal use.

19. Dr. Postma arranged for the prescriptions purportedly written for Individual A to be filled at a pharmacy and then collected the controlled substances for her own personal use.

20. Dr. Postma issued each of these eighteen opioid prescriptions without a legitimate medical purpose and outside of the usual course of professional practice.

**Individual B**

21. From November 24, 2018 through October 28, 2022, Dr. Postma issued twenty-eight (28) prescriptions made out to the name of Individual B for oxycodone-acetaminophen, an opioid-based pain medication listed as a Schedule II controlled substance.

22. Individual B never requested or received these prescribed opioids.

---

[1] This individual, and other individuals discussed in this Complaint, are identified as "Individual A," "Individual B," etc. in lieu of their names in order to protect their identity and medical prescription records in a public filing.  The United States previously identified these patients to Dr. Postma.

23. Instead, Dr. Postma, without Individual B's knowledge and without a legitimate medical purpose, used Individual B's name and identity and issued these opioid prescriptions for her own personal use.

24. Dr. Postma arranged for the prescriptions purportedly written for Individual B to be filled at a pharmacy and then collected the controlled substances for her own personal use.

25. Dr. Postma issued each of these twenty-eight opioid prescriptions without a legitimate medical purpose and outside of the usual course of professional practice.

### Individual C

26. On February 5, 2021, Dr. Postma issued a prescription made out to the name of Individual C, a minor, for oxycodone-acetaminophen, an opioid-based pain medication listed as a Schedule II controlled substance.

27. Individual C never requested or received these prescribed opioids.

28. Instead, Dr. Postma, without Individual C's knowledge and without a legitimate medical purpose, used Individual C's name and identity and issued these opioid prescriptions for her own personal use.

29. Dr. Postma then arranged for the prescriptions purportedly written for Individual C to be filled at a pharmacy and then collected the controlled substances for her own personal use.

30. Dr. Postma issued this opioid prescription to Individual C without a legitimate medical purpose and outside of the usual course of professional practice.

### Individual D

31. Between July 15, 2022 and October 28, 2022, Dr. Postma issued four (4) prescriptions to Individual D for oxycodone-acetaminophen and one (1) prescription for hydrocodone-acetaminophen, both opioid-based pain medications listed as Schedule II controlled substances.

32. Individual D never requested or used these prescribed opioids.

33. Instead, Dr. Postma, without a legitimate medical purpose, used Individual D's name and identity and issued these opioid prescriptions for her own personal use.

34. At Dr. Postma's direction, Individual D picked up the prescriptions for Dr. Postma and gave the controlled substances to her.

35. Dr. Postma issued each of these five opioid prescriptions without a legitimate medical purpose and outside of the usual course of professional practice.

### COUNT I
### (Civil Penalties for Unlawful Prescribing of Controlled Substances)

36. The United States repeats and realleges Paragraphs 1 through 35 as if fully set forth herein.

37. The CSA and its implementing regulations prohibited Dr. Postma from prescribing controlled substances without a legitimate purpose or outside the usual course of professional practice.

38. Dr. Postma issued prescriptions without a legitimate medical purpose and outside the usual course of professional practice in violation of 21 U.S.C. §§ 829 and 842(a)(1) and 21 C.F.R. § 1306.04.

39. Dr. Postma is liable for penalties of up to $78,312.00 for each violation proven at trial. 21 U.S.C. §§ 842(a)(1), 842(c)(1)(A); 28 C.F.R. § 85.5.

40. As a result of the foregoing, Dr. Postma is liable to the United States for civil penalties in an amount to be proven at trial.

## COUNT II
### (Injunctive Relief)

41. The United States repeats and realleges Paragraphs 1 through 40 as if fully set forth herein.

42. As a result of the violations referred to in Count I, Dr. Postma is subject to injunctive relief pursuant to 21 U.S.C. §§ 843(f) and 882(a).

## **PRAYER FOR RELIEF**

WHEREFORE, the United States demands judgment in its favor and against Dr. Postma as follows:

A. As to Count I, for a maximum statutory penalty in the amounts set forth above for each violation of the CSA proven at trial pursuant to 21 U.S.C. § 842;

B. As to Count II, entry of an order:

1. Declaring that Dr. Postma violated the CSA, specifically 21 U.S.C. §§ 829 and 842(a)(1);

2. Enjoining Dr. Postma from directly or indirectly distributing, dispensing, delivering, or prescribing any controlled substances as defined and identified in the CSA; and

      3. Enjoining Dr. Postma from applying or reapplying to DEA for a certificate of registration as a practitioner to prescribe and dispense any controlled substances.

  C. For interest, attorneys' fees, and costs as allowed by law; and

  D. For all such other and further relief as the Court may deem just and proper.

Dated: January 19, 2024

Respectfully submitted,

MARK A. TOTTEN
United States Attorney

*/s Whitney M. Schnurr*
WHITNEY M. SCHNURR
ANDREW J. HULL
Assistant United States Attorneys
U.S. Attorney's Office
Western District of Michigan
P.O. Box 208
Grand Rapids, MI 49503
Tel: (616) 456-2404
E-mail: Whitney.Schnurr@usdoj.gov
E-mail: Andrew.Hull@usdoj.gov

8